The first case on the call this morning is agenda number nine, case number 122566, People v. Nere. Appellant, are you ready? You may proceed. Good morning. David Gaughan, co-counsel Timothy Moran on behalf of Jennifer Nere, the appellant. Your honors, essentially what we're asking this court to do is finish what the second district appellate court started. And that is the second district agreed with us that the trial court should have followed the United States Supreme Court's interpretation, or similar interpretation of a federal statute, of the interpretation of the drug-induced homicide statute in this case, in that they should have given a but-for causation instruction instead of a contributing cause. Essentially, the United States Supreme Court, this court should follow it for two reasons. One, they interpreted what was essentially the same federal statute as the state statute here, and the statutory interpretation, this court should follow that statutory interpretation. Well, counsel, if they agreed, why aren't you sitting at the other table? Well, the reason we're not, your honors, is because the appellate court found that the trial court erred, but then the appellate court erred by not applying a harmless beyond a reasonable doubt standard to that error. Because once the appellate court found that there was an error in the instruction, they should have applied a harmless beyond a reasonable doubt standard to that instruction. Isn't it true, though, counsel, that the appellate court found no abuse of discretion in using the IPI instruction? That's correct, but that's where they applied the wrong standard. And if there was no abuse of discretion, then there was no error, right? So part of your argument is that they didn't conduct a harmless error analysis. However, they found no abuse of discretion, and if there was no abuse of discretion, where's the error? Well, I'm not saying what this court will find. We're still talking about the appellate court. Right, and I think the answer to that, your honor, is that once they found the error, which they did find, instead of applying all of that. What was the error that they found? The error they found was that the contributing factor instruction should not have been given. They agreed with the United States Supreme Court in Burridge that it left it too wide open for two reasons. But you agree that they found no abuse of discretion in tendering that instruction, the judge tendering that instruction. I agree that that's what they found, but that's where they were mistaken. Once they found that what they said was the trial court was wrong, this instruction needs to be corrected, either another court should do it or the state legislature, but we can't find that the trial court abused its discretion. What they should have done was once they found that the instruction was an error, they should not have applied an abuse of discretion standard. They should have applied a harmless beyond a reasonable doubt standard, and that's where we believe the Second District made their mistake. Once they found error, they applied the wrong standard. It did not become an abuse of discretion at that point. It should have been, okay, we found this instruction violates the United States Constitution, we agree with what they say, we agree with the United States Supreme Court in Burridge, but then instead of applying the harmless beyond a reasonable doubt, they said, but we can't find that they abused their discretion. And it wasn't the finding of lack of abuse of discretion based on the fact that the appellate court found that defense counsel's tendered instructions also suffered from defects, and the court was not going to find an abuse of discretion when the court used an IPI instruction that they believe correctly stated the law at that time? That was part of what the Second District found. So the judge is faced with an IPI instruction and faced with a tendered instruction from the defense that the appellate court didn't think accurately stated the law, so they found no abuse of discretion in tender in the IPI. Well, I think the appellate court, they mentioned there could have been also problems with the defense propounded instruction, but once the objection was made to the state's instruction, it's still incumbent. I mean, if they didn't believe that our instruction was satisfactory, it was still incumbent upon the court to give a proper constitutional instruction. I mean, it's the defendant's right to a fair trial. It's the defendant's right to be proven beyond a reasonable doubt, not the state's. So even if the court found that both instructions were inadequate, well, then it should have devised a proper instruction and a constitutionally sound instruction. And again, that's where I think the appellate court was wrong. It's as if the IPI became the holy grail instead of the charging document. I mean, if you look at the IPIs, the IPIs always follow the charging document. In this case, the IPI, the committee has never indicated that it even contemplated using 7.15 in a drug-induced homicide type case. The statute's unique. It's different. They've never contemplated it, and yet the IPI became the holy grail instead of the charging document. And if you look at the IPI, what it does is it follows the language of the particular statute, whether it's first-degree murder, second-degree murder. If you go into residential burglary, any of them, it always follows the statute and the charging document. In this case, the charging document said the act of delivering heroin, and that heroin caused the death. In this case, the IPI 7.15 said the acts of the defendant. It didn't follow the charging document. And that's where we're at. Let's talk about the instruction. The pattern instruction sets forth the contributing cause requirement. That's correct. But right after that, it states that the state has to prove that the cause of death, quote, did not result from a cause unconnected with defendant. Doesn't that statement that I just quoted ensure that there will be a but-for causation with respect to the defendant's acts? No, because if that was the case, it should be unconnected to the charged conduct of the defendant, especially in this particular case. There was other acts of the defendant that weren't charged. So the jury was free to speculate that, for example, that the facts were also that the defendant gave her a needle. Well, the jury, that's an act of the defendant if she used that needle. Well, it could have been different heroin. It could have been other drugs. It could have been whatever. That's still an act of the defendant. It's not consistent with the charging document. It should be the acts of the defendant that were charged, not just the acts of the defendant. It left the jury free to speculate on what they could use to find the defendant guilty when, according to the charge, the only thing they should have been considering was the act of the defendant delivering that particular heroin and that particular heroin causing the death. So it's not consistent. And if you look at the other homicide statutes, they all refer to the acts of the defendant. The drug-induced homicide statute already defines the act, and the act is delivery of that particular controlled substance. You've argued that the instruction is constitutionally infirm, and you've looked at the Barrage case. Can you explain to me what provision of the Constitution is violated by this, and where in the case does the Supreme Court make that statement? Well, Justice Scalia talks about it in terms of proof beyond a reasonable doubt applies to every criminal case across the country. It's part of the due process clause of the Constitution. And Justice Scalia correctly in that case, which, by the way, was a nine-to-nothing decision, says that it is not consistent with proof beyond a reasonable doubt to have this arbitrary standard. What is contributing? Is 10 percent clause enough? Is 15 percent, 20, 30, 40, 50? In terms of what that case did, there's certainly a lot of discussion in the case about the ideas of causation, but certainly this was a case that was statutory interpretation of a federal statute. But ultimately, Justice Scalia says that when there is this kind of ambiguity, perhaps in the statute, that the rule of lenity should apply. And therefore, based on that theory, they interpreted the statute using that statutory tool. That certainly is not a constitutional principle. Well, there's two different things at play, I think, in Barrage. The one is the statutory interpretation. The other one is Justice Scalia makes it quite clear that there's also a beyond a reasonable doubt issue. But he doesn't say the federal statute is somehow unconstitutional because of some violation of due process. The issue before the court is the interpretation of the federal statute, and ultimately they use the statutory construction tool of the rule of lenity to decide how to interpret it. Isn't that ultimately the court's holding? No, but I think if the court, what Barrage says, I believe, is if the court applies a contributing factor standard, then it becomes a violation of the defense constitutional rights because under a contributing factor standard, the beyond a reasonable doubt standard is violated. They say that clearly in the case? No, no, I'm saying I think, no, I'm not saying, I think that's what, I think that's the clear indication of, I mean, that's one of the, that's the main reason the court will not use a contributing factor. The statute remains constitutional because they don't apply the contributing factor. And the government in that case made all, you know, all the, I mean, very similar, if not the same arguments that the states make in here, that it's too hard to do. Well, you know, drug addicts use different drugs. It's too hard to prove. Well, that's too bad. The requirement is proof beyond a reasonable doubt. If it's hard, well, sorry. It's the defendant's right, and it's the defendant's right to be proven guilty. Had, had, well, I mean, I do believe Beresh says that under, if it's a contributing factor, then that's a violation of the defendant's right to be proven beyond a reasonable doubt. They, because they apply it but for, the statute remains constitutional. And I think that's the next step for the U.S. Supreme Court to take, honestly, is, I mean, that's the next logical step. So would it be a radical step for us to do that? I'm sorry? Would it be a radical step for this court to change our traditional view of causation? No, that's the misnomer, I believe, Your Honor, because this is a particular statute. It's a specific statute. Interpreting the drug-induced homicide statute does not mean that the court changes the interpretation of murder or reckless homicide or anything else. I mean, if the drug-induced homicide statute wasn't different, there would have been no need to enact it. You could have just charged under reckless murder or whatever. But we're asking that the court interpret the drug-induced homicide statute, and I'm glad you brought up the point because I think that's kind of what happened in the appellate court. And the light bulb went off after reading the state's reply on this, that all of a sudden you're overturning 100 years of precedence. You're not. You're looking at one particular statute, drug-induced homicide, and for two reasons it should be done. One, the plain reading of the statute, and two, constitutionally in this particular case, I mean, in this particular statute, the contributing factor does not work. It becomes a violation of the defendant's right to be proven beyond a reasonable doubt. That does not mean that it applies to first-degree murder, it applies to reckless homicide, or it applies to second-degree. It's just this particular statute. This is a separate distinct statute. Again, this court has never, to my knowledge, never dealt with the drug-induced homicide statute. I don't believe. Counsel? Yes. Was the beyond a reasonable doubt instruction not given? It was given. But it was given in a manner that the contributing cause, where the speculation comes in is there was uncertainty. The MD in this case testified that either the heroin alone could have caused the death, or the cocaine alone that was in her system could have caused the death. So the problem is the acts of the defendant here were beyond delivering the heroin. So the jury was free to speculate on, well, okay, maybe the use of the needle, maybe the cocaine. Those are all acts of the defendant. The MD could not say that the heroin alone would have caused death, and they didn't even give any kind of probability. They just said it could have been. That's where it becomes, you know, the jury is supposed to be instructed on the law. They're not supposed to guess what it is. And that's where it becomes the problem for the jury. Because the jury is looking at, all right, well, I got acts of the defendant. The acts of the defendant were delivering heroin, delivering cocaine, delivering the needle that she used, delivering a crack pipe. Well, those are all acts of the defendant. But it's got to be the charge conduct that the state has to prove the defendant guilty of beyond a reasonable doubt. And that's where the issue comes in. You argue that one of the problems with the contributing cause instruction is that it could allow a conviction for evidence that the heroin was only 0.01 percent, for example. Correct. Right? And just in this hypothetical, why would that be a problem? The person takes a tiny amount of heroin and dies, and the medical examiner testifies that the cause of death was 99.99 percent the cocaine and 0.01 percent the heroin. But this is still a situation in which the death would not have occurred but for the tiny amount of heroin. Correct? Well, then if that was the instruction, but for, but it wasn't. I mean, if it's but for. No, the instruction as given would say contributing to. Right. Right? Well, we went over that before. Did not result from a cause unconnected with defendant. So if this jury found under the scenario I give you that the 0.01 percent contributed to the death, not with a cause unconnected with defendant, why isn't that essentially but for causation? Well, that's not the evidence. The evidence was from the ME, the state's ME, that either one could have. So either one could have been 100 percent of the death. There's no testimony what percentage. So it's a hypothetical. That's why I gave you a hypothetical, though, just to show you that the argument that you make with respect to the percentage really doesn't hold water with respect to whether or not the amount, the 0.01 in my hypothetical, would be problematic for a contributing cause instruction. Well, I'm making the argument that Justice Scalia made. In Barrage, he asks, is it, that's his question. His question is, is it beyond a reasonable doubt if you can say it's 10 percent possible, 50 percent? Now, what you're saying is a different thing. You're saying that, I mean, you're saying, you're basically giving a but-for hypothetical saying that, okay, it's still that without that 1 percent, the person would not have been dead. That's not the case here. The case here is it's all could have been. But the reason I give it is to show that in that case, a contributing cause instruction would have sufficed, wouldn't it? In the hypothetical I gave you, a contributing cause rather than a but-for instruction would suffice. Well, if the enemy had testified that she would not have died but for the use of the heroin, whatever the percentage, we wouldn't be here. But that wasn't the evidence. Just so to go back to the Barrage case, in this discussion about percentages, you're correct. Justice Scalia says, is it sufficient that the use of the drug made the victim 50 percent more likely, 15 percent, 5 percent? Who knows? And then he says, in the last analysis, he's always fascinating policy discussions are beside the point. The role of this Court is to apply the statute as it's written, even if we think some other approach might be accorded with good policy. That doesn't sound like, to me, to be a constitutional mandate. He also says at another point that those percentages do not square with the standard of proof beyond a reasonable doubt. And I think what the courts try to do is avoid the constitutional issue. And that's what Barrage basically did. By not applying a contributing factor, they avoided getting into the constitutional issue. But he plainly says that those kinds of speculations cannot be squared with the standard of proof beyond a reasonable doubt, which every defendant is entitled to. He says that in the opinion. I think the statutory interpretation avoids getting into the constitutional issue, which I believe is what the court is trying to do. I guess I'll reserve the rest for rebuttal. Thank you. Thank you. Appellee. May it please the Court. Counsel. Assistant Attorney General Lindsey Payne on behalf of the people. Ms. Payne? Yes. We did the same thing to the defendant. Defendant's counsel. The appellate court reviewed this under an abuse of discretion standard. That's the standard that you cite in your brief. Yes. We have to decide in this case whether the pattern instruction correctly states the law of causation, right? Yes. And wouldn't that be a question that we review de novo? Yes. That question is reviewed de novo. The ultimate question is whether the circuit court's giving of IPI 7.15 is an abuse of discretion. But whether that was an abuse of discretion will, of course, depend upon this court's de novo interpretation of the drug-induced homicide statute. Thank you. And this case squarely presents a question of statutory interpretation of the word cause. And for over 100 years, this court has consistently defined cause in homicide cases as contributing to the victim's death and not being unrelated to that death. Drug-induced homicide statute was originally enacted in 1988, at which time it criminalized the delivery of a controlled substance when a person dies as a result of the use of that drug. In 2006, the General Assembly amended the statute to instead use the language, any person's death is caused by the use of that controlled substance. Opposing counsel's right, though, right? This court has not spoken at all regarding causation in drug-induced homicide cases, right? This court has not interpreted the drug-induced homicide. So we could easily limit our holding to that offense. It's hard to see how. The legislative history shows, and the defendant has acknowledged in her PLA, that the purpose of the General Assembly's 2006 amendment to the drug-induced homicide statute was to harmonize the causation language in the drug-induced homicide statute with all of the other homicides. Given the court's, by then, long-standing definition of cause in homicide cases, the 2006 amendment evinces an intent to define cause the same in the drug-induced homicide statute as in every other homicide statute. Why did we need the new statute? Why didn't we just use the former statute, but the other statutes for this case? Well, it's true that this crime... Why is the statute apart from all the others? What sets it apart? If we use all those other statutes, or any one of the other statutes? What sets it apart is the General Assembly's policy determination that this is a way to deter drug distribution. And they made a determination that this crime requires its own statute with its own sentencing range. And they have made a policy determination that when one delivers a controlled substance, it's a crime. When one delivers a lethal drug to another person, it's foreseeable that that person is going to be harmed or going to die. Then you concede that we should just review, as Justice Thomas said, just the statute and not bring in the other statutes in our review? Well, the word we're interpreting is cause. We know that the General Assembly... Under this particular statute? Yes. So why don't we just stay within the statute of interpretation? Well, there's no textual reason or any other reason grounded in the canons of statutory interpretation to interpret the word cause different in this statute than in any other considered statute. The defendant's entire argument relies upon a claim that Burge v. United States held as a constitutional matter, that Burge v. United States held as a constitutional matter. And that's what forecausation is required for the imposition of criminal liability. But Burge did no such thing, and Burge itself recognized that many states like Illinois use contributory causation, and it did not purport to overturn the laws of those states. Since Burge, many states have held that Burge did not announce a rule of constitutional dimension. And then in Paroline v. United States, the Supreme Court itself recognized that but-for causation is not constitutionally required for the imposition of criminal liability. And in fact, in Paroline, the court explained it would be unacceptable to adopt a causal standard so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition demands such a result. And that same reasoning applies with equal force here. Partially it appears that defendant's argument may have morphed somewhat from arguing that the word cause requires but-for causation and instead claiming that the IPI here allowed the jury to convict based on uncharged conduct. But the record contradicts that argument. Multiple times, every time any evidence that defendant had engaged in other uncharged conduct such as providing the victim with cocaine, the court gave a limiting instruction informing the jury that that evidence was only to be considered for defendant's state of mind and to provide a coherent narrative. And the jury instructions immediately before giving IPI 7.15, the court gave the elements of the offense and clearly informed the jury that the state had the burden of proving beyond a reasonable doubt that the heroin caused Augustina Taylor's death. So there wasn't any confusion here about what the state needed to prove beyond a reasonable doubt. To show that defendant caused the death of the victim. Defendant's suggestion that the General Assembly did not intend to reach low-level dealers such as herself is contradicted by the plain language of the statute. Under subsection B1 of the Drug and Use Homicide Statute, defendants who deliver relatively larger quantities of controlled substances that result in death are subject to a heightened penalty of 15 to 30 years. Defendant here was subject to a minimum of six years. She was sentenced to nine years to be served at 75%, meaning all in, she will serve fewer than seven years in prison. That is not only substantially lower than the penalty for larger scale drug distribution in Illinois, but it's also substantially lower than the 20-year minimum that was at issue in Burrage. Reinforcing the conclusion that Congress and the General Assembly intended different meanings when they drafted these different statutes. And if this court changes its definition of cause, there's no reason that that would be limited to the Drug and Use Homicide Statute. It would severely disrupt this court's homicide jurisprudence. Contributory causation is routinely relied upon in cases of multiple shooters, group feedings, and medical complications. This case is no different than this court's ruling in People v. Brown. I would strongly disagree with my opponent that it can be limited in any reasoned way to just Drug and Use Homicide cases. People v. Brown was a case of multiple shooters, both of whom struck a victim with bullets and were convicted as principals, not on accountability. And the testimony was exactly as it was in this case. Any of these bullets could have killed the victim. We can't know what would have happened had a victim been struck with two bullets rather than three bullets. It is a practical impossibility for the state to prove beyond a reasonable doubt what would have happened in that counterfactual. And this court said in People v. Brown, using Illinois' established definition of cause, that that is satisfied in that case, beyond a reasonable doubt, to say, you both committed a criminal act, you wounded this person, this was a potentially lethal bullet wound, that's good enough. And the same evidence is good enough in this case. And the causation evidence in this case, to be clear, was overwhelming. Defendant had been faced with accusations from Taylor's friends and family that she had adulterated the drugs that she gave Taylor and had intentionally killed Taylor. So seeking to clear her name, she voluntarily went to the police. She gave a detailed, recorded statement explaining how the day after Taylor was released from six months in prison, defendant gave Taylor crack cocaine, a crack pipe, two bundles of heroin and a syringe. The evidence showed that leading up to her death, Taylor spent the day with her family, out in the open, behaving normally, seemingly sober, and it was only after she received the drugs from defendant that she immediately secreted herself in the bathroom and died shortly thereafter. The medical examiner testified that Taylor had consumed a relatively large quantity of heroin, resulting in morphine levels in her blood, well above the therapeutic range for morphine, and that the amount of heroin Taylor had consumed was consistent with fatalities seen in other cases. Is it correct that the jury couldn't consider the cocaine that the defendant delivered, but only the heroin? Is that correct? It's correct that the cocaine wasn't charged, and so the jury needed to find beyond a reasonable doubt that the heroin caused Taylor's death using this court's definition of cause, meaning contributory cause. And the medical examiner's testimony was absolutely that the heroin contributed to Taylor's death. And how was that explained to the jury? It was explained first by giving the elements of the offense. So they were instructed that to sustain the charge, the state had to prove that defendant knowingly delivered the heroin, that Taylor injected, inhaled, or ingested that heroin, and that Taylor's death was caused by that injection, inhalation, or ingestion. And then they were given IPI 7.15, saying that the state had to prove that defendant knowingly delivered the heroin, that the state had to prove beyond a reasonable doubt that defendant's acts were a contributing cause of the death, that the death was not unconnected to the acts of the defendant, and it wasn't necessary to find that the acts were the sole and immediate cause of the death. So those instructions, in combination with the multiple limiting instructions telling the jury evidence of cocaine is only for the state, that the heroin was the basis of the charge. And so using the established definition of cause, the state more than proved its case. And because but-for causation was not intended by the General Assembly when it drafted the statute, and because it's not intended by the General Assembly, this court should not depart from stare decisis to redefine causation in this case. If there's no further questions, we'd ask that the court affirm. Thank you. Marie Buttle. Thank you. The instruction says the state must prove beyond a reasonable doubt that the defendant's acts were a contributing cause of the death, and the court should not depart from stare decisis to redefine causation in this case. Even if the court, well, the trial court didn't agree with us on Burrage, but they at least should have agreed with us to modify that instruction, which we requested to say that the defendant's act of delivering heroin and that act caused the death. It left it too wide open for the jury. And the IPI is, again, not the holy grail. The holy grail is the statute of the charging document. And when the IPI doesn't adequately follow the charging document, and if you look at the IPI, the IPA, it follows the specific language of murder, it follows the specific language of second-degree reckless homicide, and then, you know, counsel says that all of a sudden, if you interpret the drug-induced homicide statute different than the murder ones, you're changing 100 years of precedent. That's wrong. The better example is if you look at felony murder. What did the IPI do, and what have the courts done with felony murder? Because it's a different, distinct homicide statute, they changed the instruction to be consistent with the charging document. It wasn't here. As far as the Paroline case, that case dealt with restitution. It dealt with the issue after the defendant was proved guilty beyond a reasonable doubt. It wasn't a similar case in the sense that beyond a reasonable doubt it had already been satisfied. This court should reverse for two reasons. One, on statutory interpretation. The court should find that the defendant was convicted. The second reason is how the same interpretation that the United States Supreme Court used in essentially the same case. Counsel misrepresented our argument. What we argued was, and we used people versus kids, second district appellate court case, coincidentally, the same second district that decided people versus Mary. What they said in that case was that when the legislature changed the language from results from, which was essentially the same thing, they changed the language from results from the same language as the federal statute to caused by, the appellate court found that they didn't think the legislature was changing the meaning of this statute. That's what people versus kid did. So our argument is that for all essential purposes, the drug-induced homicide statute reads the same or essentially the same as the federal statute. And therefore, this court should at least look at the guidance of the United States Supreme Court in interpreting the statute. The second argument is, applying a contributing factor case type instruction to this statute, to this particular case, then you get into constitutional issues. Because, again, to go back to Justice Scalia, you cannot square proof beyond a reasonable doubt with the kind of guessing that's involved when you start taking percentages. If the ME can't testify that the defendant was convicted, then you can't testify that the defendant would have died, but for the use of that heroin, then the states fail under this statute to prove the guilt beyond a reasonable doubt. If there's no further questions, we'll rely on the brief for the rest and we would ask that this court reverse the trial court's conviction and really, again, finish what the second district appellate court started, because the appellate court clearly says the instructions were lacking. So we ask now that the court take the next step and apply the harmless beyond a reasonable doubt standard to the trial court's error, and if the court does that, there's no other conclusion but that the case should be reversed, because the ME clearly testified that the cocaine alone could not have been the cause of death, or the heroin alone could have caused the death. Well, if the cocaine caused the death or could have caused the death, then we're going to start flipping coins on which one did. Well, if the cocaine did, then the heroin didn't. Then the case needs to be reversed. If there's no further questions, then thank you. Thank you. Case number 122566, People v. Near, will be taken under advisement as agenda number nine. Mr. Gahl and Ms. Payne, we thank you for your arguments this morning. You are excused with our thanks.